1
2
3
4
5
6
7
8
9
10
11
12

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATHEN BARTON, | Case No.: 3:23-cv-06071 |
| Plaintiff | 1ST AMENDED COMPLAINT FOR A CIVIL CASE AND INJUNCTIVE RELIEF |
| v. | |
| Alleviate Tax LLC, and John Doe 1-10 | AMENDED AS A MATTER OF COURSE |
| Defendants. | |
| | Jury Trial: ☒ Yes ☐ No |

13

## I.    INTRODUCTION

14  1. There are telemarketers in America whose long-term business model is placing lots and lots

15     of unsolicited robocalls.

16  2. Companies who sell a particular widget are looking for customers interested in such widgets,

17     and telemarketers are eager to introduce widget makers with possibly interested customers.

18  3. And some telemarketers call all the phone numbers they can, playing pre-recorded or

19     artificially generated speech about widgets.  The telemarketer does this to build up pool of

20     valid phone numbers, noting key demographics of the people behind the phone numbers like

21     age, gender, interests, or location.

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

4. When the telemarketer strikes a deal with a specific widget maker to find potential customers, the telemarketer goes to their calling pool, and calls the people that fit the widget maker's specified customer profile.  And calls them again and again . . .

5. When the telemarketer finds a consumer they can sell to a widget maker, they call that person a "Lead".

6. The telemarketer passes the Lead to a widget maker for monetary gain, the widget maker is happy to have someone to pitch their widgets to, and everyone in the loop is a winner.

7. Except for people like Senator Hollings and Plaintiff who don't want the phone calls.  In our experience:

> "[c]omputerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."

47 CFR § 64.1200(f)(10) defines "seller" as

> "The term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

47 CFR § 64.1200(f)(12) defines "telemarketer" as

> "The term telemarketer means the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

8. An unknown entity ("Telemarketer") placed a long series of robocalls to Plaintiff, adding and maintaining his phone number in a pool of phone numbers until such time as they could sell Barton and people like him as a Lead to a Seller.

9. A robocall is a call that starts out with artificial or prerecorded voice.

10. A "robocall script" or "robocall scripts" or "script" or "scripts" is the transcript of the artificial or prerecorded voice portion of the robocall if there was only one, or refers to multiple scripts if there were multiple unique transcripts.

11. At some point Alleviate Tax LLC (The Seller in this lawsuit also known as "Alleviate") hired the Telemarketer to act as their agent to place robocalls to people in the pool of numbers, and warm transfer potential customers to Alleviate.

12. Alleviate gave the Telemarketer their own list of telephone numbers for the Telemarketer to include in the Telemarketer's calling list.

13. Telemarketer dialed Barton's numbers to get him on the phone.

14. The Telemarketer in this lawsuit transferred a call involving (360) 910-1019 to Alleviate.

15. This is Barton's (360) number.

16. The Telemarketer transferred Barton to Alleviate agent or employee Ashley Nguyen.

17. The Telemarketer in this lawsuit acted to transfer calls involving (469) XXX-XXXX to Alleviate.

18. This is Barton's (469) number.

19. The Telemarketer in this lawsuit acted to transfer calls involving (972) XXX-XXXX to Alleviate.

20. This is Barton's (972) number.

21. They did this to Barton and both Alleviate and the Telemarketer violated the Telephone Consumer Protection Act and Washington State telemarketing laws in doing so.

22. In this 4/15/2023 "Inside Sales Representative" job posting,[1] Alleviate put as a responsibility:

23. "Qualify warm inbound leads."

---

[1] https://www.salary.com/job/alleviate-tax/inside-sales-representative/j202209212102096966023

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

## II.     BASIS FOR JURISDICTION

24. Plaintiff Nathen Barton is a natural person and resident of Clark County, Washington. Nearly all the acts alleged in this complaint occurred in Clark County, Washington State, during 2023 and the past four years.

25. Jurisdiction in this court is correct because of where Plaintiff resides, and his residence is a nexus where Plaintiff suffered personal injury and invasion of privacy at the hands of the Defendants.

26. Defendants directed telephone calls to Plaintiff's phone in this district and the Telemarketer continued to call even after learning Barton lived in Clark County, Washington State.

27. Thus, for many of the calls, Defendants knew or should have known they were calling a consumer located in Clark County of Washington State.  Further, they called a (360) area code phone number.

28. All the specifically identified telemarketing phone calls alleged in this complaint were made to phone numbers assigned to Plaintiff in exchange for a monthly service fee.

29. Washington State has long held that a party availing themselves of the privilege of conducting activities inside of Washington State is subject to the jurisdiction of Washington State.  See *Cofinco of Seattle, Ltd. v. Weiss.*[2]

30. The Defendants need not physically visit Washington.  The internet and the telephone allow anyone in one state to do business in all others.

31. In a case decided before "internet" was a word, our Washington Supreme Court recognized that jurisdiction may be established by "affirmative acts taking place here by which the out-

---

[2] *Cofinco of Seattle v. Weiss*, 25 Wn. App. 195, (Wash. Ct. App. 1980)

1ST AMENDED PLAINTIFF'S COMPLAINT FOR A CIVIL CASE  - 4 / 46

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

of-state resident overtly submits to jurisdiction". *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*[3] quoting *Quigley v. Spano Crane Sales & Serv., Inc.*[4]

32. The Defendants initiated or incentivized others to initiate phone call solicitations to Plaintiff and other residents of Washington State, and they a significant fraction of the phone calls would be to Washington State residents, establishing jurisdiction here. *Nixon v. Cohn.*[5]

33. Plaintiff is suing in part under federal statute the Telephone Consumer Protection Act of 1991, known as the TCPA, giving rise to a lawsuit that may be brought in Federal Court pursuant to *Mims v. Arrow Fin. Services, LLC.*[6]

### III.   THE PARTIES TO THE LITIGATION

34. Plaintiff Nathen Barton resides at 4618 NW 11th Cir, Camas WA 98607, inside the bounds of Clark County, Washington State.

35. Defendant Alleviate Tax LLC ("Alleviate") is a California registered company with its principal places of business at 2108 N St Ste N, Sacramento CA 95816.

36. Alleviate may be served with process via Northwest Registered Agent, Inc.

37. The entity that initiated the calls to Barton is a "John Doe", also known in this complaint as "Telemarketer".  There may be other unknown entities that are also legally responsible for the illegal phone calls.

38. Alleviate either used the Telemarketer as their agent or Alleviate may be the Telemarketer.

---

[3] *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn. 2d 679, 684 (Wash. 1967)
[4] *Quigley v. Spano Crane Sales Serv*, 70 Wn. 2d 198, 203 (Wash. 1967)
[5] *Nixon v. Cohn*, 62 Wn. 2d 987, 995 (Wash. 1963)
[6] *Mims v. Arrow Fin. Servs. LLC*, 565 U.S. 368, (2012)

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

# IV.    STATEMENT OF CLAIM

39. Plaintiff is the subscriber of the phone numbers that received the calls.  This alone gives Barton Article III standing to sue for TCPA damages in federal court.[7]

40. Plaintiff pays for the subscription fees from his personal funds.

41. Plaintiff uses the telephone numbers that received the calls as residential telephone lines.

42. Plaintiff answered each telephone call specifically listed in the Complaint.

43. The phones were and are on limited-service plan, with each call, text, or data usage subtracting from a fixed amount of each available each month.

44. Plaintiff registered the phone numbers at issue on the FTC national *do-not-call* registry more than 31 days before all calls at issue in this Complaint.

45. At no time relevant to this lawsuit did Plaintiff consent in writing to any back tax abatement solicitation calls that introduce an advertisement.

46. At no time relevant to this lawsuit did Plaintiff consent in writing to any back tax abatement solicitation calls that constitutes telemarketing.

47. At no time relevant to this lawsuit did Plaintiff consent in writing to any back tax abatement solicitation calls that contain artificial or pre-recorded speech.

48. Barton never heard of Alleviate Tax prior to unmasking them recently.  All times listed are Pacific Standard Time.

49. The time frame of the allegations in this lawsuit is during the period of times Barton was receiving Script A and Script B calls unless dated otherwise.

**Unsolicited Telemarketing Calls**

---

[7] *Hall v. Smosh Dot Com*, No. 22-16216, (9th Cir. Jun. 30, 2023)

50. The telemarketer in this case has called Barton many times using a variety of calling scripts and fake names like (but not limited to) "Ella" and "Jessica" and "Tax Relief Services".

### Calling Script A

51. A sentence or so may vary from call to call, but Calling Script A is read by the same woman's voice and Calling Script A calls follow most of this text verbatim, including the same manners of speech, tone, and voice inflections.

52. There may be small transcribing errors but the following transcript of Script A calls is accurate in form and substance.

53. "Yes hi this is Ella and I'm the director here for the federal back tax abatement program. How are you doing today?  Ok so I've been assigned to reach out to you and make sure that you have been provided the information about the new tax debt abatement program offered during open enrollment this information is extremely important with helping those who owe back taxes to get out of debt quickly.  So do you happen to owe any back taxes at this time?  Ok you need this information then so let me go ahead and patch in my assistant that will be able to get that information out to you one moment please.  Ok so this special program has been recently approved as of August 2022.  The purpose of the tax dismissal program is to help those struggling with tax debt.  However, there's certain requirements to be eligible. You cannot currently be in any other tax debt consolidation or settlement program.  You cannot currently be in bankruptcy.  And you must have a household income of under two hundred and fifty thousand dollars a year.  But you do have to have monthly income of at least two thousand dollars a month.  So I need to ask you do you meet these minimum requirements for eligibility? Press one for yes two for no.  Ok so please hold a moment while I retrieve the information.  One moment please.

54. [different woman's voice] Thanks for connecting.  Our system has received your information and is processing it now in order to deliver the information to you in the most efficient way possible.  While you wait please listen to these important facts about the special programs designed for those who owe more than ten thousand dollars in federal back taxes due to new updates in 2022 to the right for financial privacy act.  The human advisor must provide you the information directly while you wait to be connected.   You should be aware human advisors are not able to handle opt outs or do not call requests.  However, our system has been set up to handle opt outs by immediately placing your telephone number on our do not contact list if you simply hang up the call within the next ten seconds.  Again there is no need to connect with a live advisor to do so.  The timer starts now.  Otherwise, please listen to these important facts about the solution and process available for those who owe more than ten thousand dollars in federal back taxes.  Please note as soon as an advisor becomes available in the next few moments this message will be interrupted and your call connected.  Meanwhile, here are some important facts you should know.  The federal back tax solution specialist is a private for profit company comprised of tax attorneys [unclear] slash [unclear] and federally enrolled licensed agents.  As you may have read in the news the IRS has recently hired eighty seven thousand new agents [unclear] to go after past due taxes as well as other cases.  So it is a very good time to let us resolve this issue before it becomes overwhelming [unclear] but has never been an efficient solution to help those with over ten thousand dollars owed to the IRS due to the sheer cost involved in getting those cases dismissed.  Now there is.  So this means there has never been a better time to resolve your debts.  We have made the solution streamlined for you and once you are connected with a licensed enrollment agent they will be able to use a special communication line to the IRS

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

called the practitioners line this means there won't be any waiting to find out exactly how much you owe and what options for removal you have.  The whole process takes less than fifteen minutes.  Once you are connected to your assigned enrollment agent we are searching for as you listen to this message again this message will end once your assigned enrollment agent becomes available within the next few moments there is no longer a need to fear the IRS with our CPAs and attorney specialists on your side.  In fact, the government suspended the tax collection act and is willing to settle all old tax debts that US residents may have but they needed an efficient way to let the public know about the new solutions so they can get the past due accounts off their books.  In order to achieve this they engaged third party licensed enrollment agents like our firm to help notify and streamline the process for them.  This is why they have provided this special back channel communication telephone line to us in order to help out the millions of US residents like you that have back taxes.  The bottom line to you is this means you are not going to need to pay back your past due taxes since they are non collectable and ready to be settled.  Please continue to hold while we continue to search for the next available enrollment agent to connect.  [different woman's voice] A representative is now available to take your call.  Press five on your phone now to be connected.  [music].

55. Alleviate created some or all of this Script A.

56. Alleviate approved the Telemarketer to initiate calls on its behalf using some or all of this Script A.

57. Alleviate knew the Telemarketer was using some or all of this script as the Telemarketer was initiating calls using this Script A.

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

58. A warm transfer is when the Telemarketer has a consumer on the phone, and joins Alleviate to the call.

59. Alleviate knew the Telemarketer was playing this Script A to consumers before warm transferring them to Alleviate.

60. Alleviate paid the Telemarketer a fee for every warm transfer that met certain requirements.

61. In this complaint, calls said to be following Script A will all start the same way and were spoken by identical sounding voices.

62. In resent lawsuit *Ewing v Alleviate Tax*,[8] that legal complaint also reported that to speak to a live agent the call recipient had to press '1', and then "press five to be connected" (or words to that effect) were used by Alleviate Tax to place illegal calls.

63. This matches calling Script A in this lawsuit.

64. The robocall scripts in *Ewing* were the same or very similar to the robocall scripts in this lawsuit.

### Calls using Calling Script A

65. Barton received the following calls that follow Calling Script A on the listed dates.  The Defendants blocked the telephone system from transmitting any calling number at all, so these calls came up as "unknown" or "Unknown" and did not show the calling numbers.

66. This list of calls is not exhaustive.  Barton believes the Defendants have used other calling scripts with other calling numbers to place other calls to Barton.

| Call # | Calling Number | Call Date | Phone # |
|--------|----------------|-----------|---------|
| 1 | "Unknown" | 4/5/2023 | (469) |
| 2 | "Unknown" | 4/6/2023 | (469) |
| 3 | "Unknown" | 4/27/2023 | (972) |
| 4 | "Unknown" | 4/27/2023 | (972) |

---

[8] https://dockets.justia.com/docket/california/casdce/3:2023cv01231/762938

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

| 5  | "Unknown" | 6/7/2023  | (360) |
| 5  | "Unknown" | 6/26/2023 | (469) |
| 6  | "Unknown" | 7/11/2023 | (469) |
| 7  | "Unknown" | 7/11/2023 | (360) |
| 8  | "Unknown" | 7/12/2023 | (469) |
| 9  | "Unknown" | 7/13/2023 | (469) |
| 10 | "Unknown" | 7/13/2023 | (360) |
| 11 | "Unknown" | 7/17/2023 | (972) |
| 12 | "Unknown" | 7/18/2023 | (469) |
| 13 | "Unknown" | 7/26/2023 | (972) |
| 14 | "Unknown" | 8/2/2023  | (972) |
| 15 | "Unknown" | 8/2/2023  | (469) |
| 16 | "Unknown" | 8/7/2023  | (972) |
| 17 | "Unknown" | 8/9/2023  | (469) |
| 18 | "Unknown" | 9/8/2023  | (360) |

67. The Defendants initiated each of the calls to encourage Barton to purchase tax abatement or related services.

68. Alleviate accepted transferred telephone calls from the Telemarketer on 7/18/2023.

69. Alleviate accepted transferred telephone calls from the Telemarketer on 7/26/2023.

70. Alleviate accepted transferred telephone calls from the Telemarketer on 8/2/2023.

71. Alleviate accepted transferred telephone calls from the Telemarketer on 8/7/2023.

72. Alleviate accepted transferred telephone calls from the Telemarketer on 8/9/2023.

73. Alleviate accepted transferred telephone calls from the Telemarketer on 9/8/2023.

74. The Defendants block the telephone system from transmitting their calling number to Barton because they know their calls are illegal and they want to evade responsibility as best they can.

75. This matches the allegations in a resent lawsuit against Alleviate captioned *Crews v Alleviate Tax LLC*.[9]

---

[9] https://dockets.justia.com/docket/arizona/azdce/2:2023cv01264/1340098

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

76. The robocall scripts in that lawsuit were the same or very similar to the robocall scripts in this lawsuit.

77. That lawsuit also alleged Alleviate blocked their outgoing number from showing on caller ID.

78. In almost no calls in this lawsuit did the defendants identify "the business, individual, or other entity that is responsible for initiating the call".

79. In not one of the prerecorded or artificial voice calls did the caller share the "telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual".

80. In not one of the prerecorded or artificial voice calls did the caller "provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request".

81. In not one of one of the defendants calls to Barton did they "identify him or herself and the company or organization on whose behalf the solicitation is being made and the purpose of the call within the first thirty seconds of the telephone call."

82. And in these telephone calls where a live sales representative was not available within two seconds of Barton's completed greeting, in no call did the Defendants provide "A prerecorded identification and opt-out message that is limited to disclosing that the call was for "telemarketing purposes" and states the name of the business, entity, or individual on whose behalf the call was placed, and a telephone number for such business, entity, or individual that permits the called person to make a do-not-call request during regular business hours for the duration of the telemarketing campaign".

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

83. Plaintiff knows which calls are using pre-recorded or artificially generated voice because they use simple announcement type voice, only can respond appropriately to simple expected responses, cannot respond to voice, the voice admits it is a robot, the calling system respond inappropriately to complicated or unexpected responses, the voice is often glitchy, the voice tone doesn't vary or respond to the caller's tone, the calls sound identical to other calls, and the impersonal nature of each call.

84. They do not have a personalized greeting and the voice passes the call to a live person if it hears anything more than simple or expected responses.

85. In this case, however, the calling script itself identifies the speaker as inhuman.

### Alleviate is responsible for the Calling Script A calls

86. On 7/11/2023 Barton received a Script A robocall from an "Unknown" telephone number.

87. In yet another lawsuit, another Plaintiff reports receiving robocalls from Alleviate a month earlier.[10]

88. The calling scripts in that lawsuit were the same or very similar to the calling scripts in this lawsuit.

89. Barton received the call at phone number (360) 910-1019.

90. Barton answered the phone.

91. Eventually Barton was transferred to Ashley Nguyen.

92. The Telemarketer transferred the call to Alleviate.

93. Alleviate paid the Telemarketer for the transfer.

94. On that day Nguyen was an employee of Alleviate.

95. On that day Nguyen was an agent of Alleviate.

---

[10] https://dockets.justia.com/docket/new-york/nyedce/1:2023cv05457/500445

1ST AMENDED PLAINTIFF'S COMPLAINT FOR A CIVIL CASE  - 13 / 46

CASE 3:23-CV-06071

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1    96. Nguyen introduced herself on the phone to Barton as "Tax Relief Services this is Ashley".

2    97. "Tax Relief Services" is not a registered *doing-business-as* for Alleviate.

3    98. Even if it was "The FCC clarified that providing a d/b/a in a telemarketing message is

4    permissible, but it is insufficient to fully comply with Section 64.1200(d)(4)". *Robison v.*

5    *7PN, LLC*.[11]  It also fails [RCW 80.36.390](RCW 80.36.390) "A person making a telephone solicitation must

6    identify . . . the company" because a d/b/a is not identifying the company.

7    99. While Nguyen works for Alleviate, she used the fake name "Tax Relief Services" when

8    introducing herself because she knew she was taking warm transfers from illegal

9    telemarketing calls.

10   100.                                                                                          She

11   knew that some of the illegal telemarketing robocalls used the name "Tax Relief Services"

12   and she chose her greeting to match the robocalls.

13   101.    Nguyen did not want to identify Alleviate until she was confident she had an actual

14   customer on the line.

15   102.    On 7/11/2023, Nguyen knew she was accepting transferred calls from the Telemarketer.

16   103.    On 7/11/2023, Nguyen had been previously trained by Alleviate on how to interview the

17   person the Telemarketer transferred to Alleviate.

18   104.    Alleviate trained Nguyen on how to avoid identifying the company until Nguyen had

19   confidence the transferred person would become an Alleviate customer.

20   105.    Alleviate warned Nguyen that the Telemarketer was making illegal calls that could get

21   Alleviate sued.

22   106.    Alleviate instructed Nguyen to answer the phone as "Tax Relief Services".

---

[11] *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1178 (D. Utah 2021)

1ST AMENDED PLAINTIFF'S COMPLAINT FOR A CIVIL CASE  - 14 / 46

CASE 3:23-CV-06071

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

107.    Alleviate trained Nguyen on how to deflect questions about who Nguyen was working for.

108.    Alleviate trained Nguyen to hang up the phone if a consumer seemed too interested in who Nguyen was working for.

109.    During the entirety of the 41-minute call where Nguyen introduced herself as "Tax Relief Services this is Ashley", the Telemarketer never identified who initiated the call.

110.    During the entirety of the 41-minute call where Nguyen introduced herself as "Tax Relief Services this is Ashley", the Telemarketer never identified on whose behalf the call was initiated.

111.    During the entirety of the 41-minute call where Nguyen introduced herself as "Tax Relief Services this is Ashley", Alleviate never identified themselves.

112.    Alleviate knew the Telemarketer was blocking their outgoing telephone number on the telephone call where Nguyen introduced herself as "Tax Relief Services this is Ashley".

113.    Alleviate gave the Telemarketer approval to block their outgoing telephone number on the telephone call where Nguyen introduced herself as "Tax Relief Services this is Ashley".

114.    During the entirety of the 41-minute call where Nguyen introduced herself as "Tax Relief Services this is Ashley" the defendants never identified whose behalf the call was initiated.

115.    During the 41-minute call Nguyen learned that Barton lived in Clark County, Washington State.

116.    The Telemarketer initiated the call and Alleviate joined the call to encourage Barton to purchase tax services that typically cost thousands of dollars.

117.    Alleviate is a for-profit business.

118.    Eventually the call ended.

119.   Nguyen hung up.

120.   Barton did not consent on this call to receive another call from Alleviate.

121.   Barton did not give Nguyen a telephone number.

122.   Barton did not inquire about Alleviate's services.

123.   Barton did not create an Established Business Relationship with Alleviate during this 41-minute call.

124.   Barton did not know Alleviate's actual identity at the time Nguyen hung up so could not consent to more calls from Alleviate.

125.   If Alleviate did not contact Barton again, Barton did not have a way to learn of Alleviate's identity.

126.   Nguyen called (360) 910-1019 back later the same day.

127.   After Nguyen called Barton back, she continued to interview Barton to close the sale.

128.   After about five more minutes of interview, she said she would find out if they would take Barton as a client and left the call to do that.

129.   Nguyen returned to the call to tell Barton he was approved.  Nine minutes into this return call Nguyen finally volunteered to identify her company name.

130.   Barton has received other calls from "Tax Relief Services" and believes these calls originated from Alleviate or Alleviate hired someone to initiate these calls to Barton.

131.   By giving a fake business name, Nguyen was free to hang up if she suspected the caller would hold her company accountable for illegal calls, and the caller would have no evidence against Alleviate.

132.   Nguyen would have hung up immediately if Barton started asking about the real name of her employer early in the call.

133.    Nguyen sent Barton an electronic business card via text message.

134.    Nguyen sent Barton an electronic business card via text message to prove her identity.

135.    Nguyen sent Barton an electronic business card via text message to prove her identity and relationship with Alleviate.

136.    On 7/12/2023, Alleviate knew Barton resided in Washington State.

137.    Nguyen had the consent of Alleviate to send Barton her electronic business card.

138.    Barton is not claiming damages for this text message where Nguyen sent Barton an electronic business card via text message to prove her identity and relationship with Alleviate.  It is just chronicled for information.

139.    Nguyen encouraged Barton to purchase tax abatement services from Alleviate.

140.    On 7/17/2023 Barton sent the following email to Alleviate (support@alleviatetax.com):

> Dear Sirs,
> My name is Nathen Barton.
> For a long time I have received robocalls soliciting for back taxes. Last week I received several calls using this calling script:
> [Script A]
> Calls were dialed to my phone (360) 910-1019.
> These calls were soliciting for you – after playing the script above, I was transferred to one of your agents, an Ashley Nguyen.
> I did not ask for these calls and I do not want these calls.
> Can you tell me why I am receiving these calls soliciting for you?
> Please put my number on your do-not-call list.
> Thank you,
> Nathen

141.    This do-not-call request was made with a reasonable means.

142.    It was a do-not-call request.

143.    This was Barton's second *do-not-call* request to Alleviate.

144.    Barton did not receive any response to this email from Alleviate.

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

145.    Instead of investigating their telemarketer or contact Barton to find out the details of the illegal calls, they continued to do business with the telemarketer to get the benefits of the illegal calls.

146.    They did not instruct the Telemarketer to put any of Barton's phone numbers on the Telemarketer's *do-not-call* list.

147.    They did not instruct the Telemarketer to put (360) 910-1019 on the Telemarketer's *do-not-call* list.

148.    Alleviate did not do an investigation in response to Barton's email.

149.    Alleviate did not do a reasonable investigation in response to Barton's email.

150.    Alleviate did not do an investigation in response to Barton's email because they already suspected the Telemarketer was placing robocalls.

151.    Alleviate did not do an investigation in response to Barton's email because they already knew the Telemarketer was placing robocalls.

152.    Alleviate did not do an investigation in response to Barton's email because they already suspected the Telemarketer was placing unwanted calls.

153.    Alleviate did not do an investigation in response to Barton's email because they already knew the Telemarketer was placing unwanted calls.

154.    Alleviate received complaints about this Telemarketer prior to receiving Barton's complaint.

155.    Alleviate received complaints about this Telemarketer using robocalls prior to receiving Barton's complaint.

156.    Alleviate received complaints about this Telemarketer placing unwanted calls prior to receiving Barton's complaint.

157.    On 8/7/2023 Barton received another Script A call on his (972) phone number that was directly soliciting for Alleviate.

158.    On 8/8/2023 Barton received another Script A call from the defendants on his (360) phone number.

159.    Barton does not know all the content of the written agreement between Alleviate and the Telemarketer but they have an agreement for the Telemarketer to a) robocall the public, and b) warm transfer called parties to Alleviate phone agents in exchange for payment.

160.    Alleviate is aware that the Telemarketer is robocalling to find people to warm transfer to Alleviate because Barton himself notified Alleviate on 7/17/2023 when he emailed him the letter above to notify them of a robocall the Telemarketer placed to Barton on 7/13/2023, and then warm transferred to Alleviate.

161.    After receiving Barton's 7/17/2023 email, on 8/7/2023 the Telemarketer again robocalled Barton on Alleviate's behalf and for Alleviate's benefit.

162.    On 8/7/2023 the Telemarketer robocalled Barton.

163.    After getting Barton on the phone the Telemarketer transferred the call to (202) 915-8421.

164.    On 8/7/2023 Alleviate was the subscriber of (202) 915-8421 on 8/7/2023.

165.    On 8/7/2023 Alleviate was the customary user of (202) 915-8421 on 8/7/2023.

166.    On 8/7/2023 phone number (202) 915-8421 had an automated incoming call greeting that started with "Hello and welcome to Alleviate Tax".

167.    At a minimum Alleviate has liability for the actions of the Telemarketer because Alleviate has ratified their conduct.

168.    The Telemarketer transferred Barton to Alleviate to encourage Barton to purchase services from Alleviate.

169.    Each time the Telemarketer transferred or attempted to transfer Barton to Alleviate it was because Alleviate had a contract with the Telemarketer to make these transfers.

170.    Alleviate acknowledged in this contract that the Telemarketer would make telemarketing calls to consumers looking for potential customers for Alleviate.

171.    Alleviate agreed to pay the Telemarketer for each consumer the Telemarketer transferred to Alleviate if the consumer stayed on the phone with Alleviate for at least a minimum length of time specified in the contract.

172.    Alleviate agreed to pay the Telemarketer for each consumer the Telemarketer transferred to Alleviate if the consumer agreed to become a customer of Alleviate.

173.    Barton believes Alleviate knew the Telemarketer was generating Leads using robocalls prior to Barton's email and knew or should have known the Telemarketer was generating Leads using illegal robocalls because of tactics like blocking the outgoing calling numbers.

174.    Alleviate never asked the consumers the Telemarketer transfer to Alleviate if the consumer had consented to the call the Telemarketer initiated to the consumer that resulted in the transfer.

175.    Even after Barton's 7/17/2023 email to Alleviate, Alleviate never asked the incoming transferred people if the Telemarketer had robocalled them.

176.    Even after Barton's 7/17/2023 email to Alleviate, Alleviate never asked the incoming transferred people if the Telemarketer had their consent to be called.

177.    Alleviate willfully chose to be blind to the Telemarketer's illegal calls.

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

178.    Nguyen giving a fake business name at the start of the call is evidence Alleviate knew or suspected the incoming warm transfers were the result of illegal calls and Alleviate didn't want to give out their business name before engaging in a lengthy screening process with the called people.

179.    The Telemarketer also acted under Alleviate direct or apparent authority in placing these calls and transferring them to Alleviate.

180.    The Telemarketer and Alleviate set up the calls to start with an artificial or pre-recorded voice message, to then be directly transferred to Alleviate.

181.    Alleviate's agents often used the same fake business names mentioned in the robocalling scripts to maintain the illusion.

182.    Their plan was to give the consumers the impression that the Telemarketer was Alleviate.

183.    Alleviate has been sued before for exactly the same claims – see *Salaiz v Alleviate Tax LLC*.[12]

184.    The robocall scripts in that lawsuit were the same or very similar to the robocall scripts in this lawsuit.

185.    In a complaint dated 9/22/2022, Alleviate was robocalling using the script "Jessica with tax relief center".

186.    Alleviate and the Telemarketer were so lazy that a year later they had only changed it to "Jessica with Tax Relief Services".

187.    In *Salaiz* the Alleviate live agent was answering the phone "tax relief center" and a year later the Alleviate live agent was answering the phone "Tax Relief Services".

188.    In *Salaiz* the Alleviate live agent was named Brandon Nguyen.

---

[12] https://dockets.justia.com/docket/texas/txwdce/3:2022cv00340/1190058

1  189.   He is a relative of Ashley Nguyen.

2  190.   The *Salaiz* complaint, dated about a year prior to Barton's, shows Alleviate was on notice

3          about robocalls soliciting for Alleviate, and yet they did not change their business practices.

4                          **Barton gives Alleviate DNC request #1**

5  191.   On July 13, 2023, Alleviate employee or agent Ashley Nguyen used phone number (949)

6          570-4186 to send and receive text messages.

7  192.   Nguyen received the following text message from (360) 910-1019 "Hi, my wife and I

8          discussed it and we don't want to do this.  Thank you for your time but please put us on your

9          do not call list."

10 193.   Nguyen received this message on 7/13/2023 or 7/14/2023.

11 194.   The same day Nguyen received this message, she acknowledged receipt of *the do-not-*

12         *call* request.

13 195.   "Congress has delegated the FCC with the authority to make rules and regulations to

14         implement the TCPA".[13] An FCC Declaratory Ruling[14] adopted on 11/29/2012 says that a

15         one-time text message confirming a consumer's opt-out request is permissible so long as it

16         follows certain rules. *Id* at ¶1. Those rules are:[15]

17 •       only confirm the consumer's opt-out request and do not include any marketing or
18         promotional information;
19
20 •       the only additional message sent to the consumer after receipt of the opt-out request.
21
22 •       be sent shortly after the consumer's request.

---

[13] *Satterfield v. Simon Schuster*, 569 F.3d 946, 953 (9th Cir. 2009)

[14] https://docs.fcc.gov/public/attachments/FCC-12-143A1.pdf  *Van Patten* cited it as "persuasive guidance".

[15] *Id* at ¶11

196.    Nguyen's text confirming Barton's opt-out request asked Barton to explain why he would

not do business with Alleviate.

197.    This attempt to further solicit Barton is impermissible under FCC regulations.

198.    Alleviate should have put all of Barton's numbers they knew of, or should have known

of, on their DNC list.

## Calling Script B

199.    Alleviate is behind another calling script, Script B.

200.    On April 18, 2023, Barton received a call from (972) 694 9866 were an artificial or pre-

recorded woman's voice said what will be known as Calling Script B.

201.    There may be small transcribing errors but the following transcript of Script B calls is

accurate in form and substance.

202.

"Hi, my name is Jessica with Tax Relief Services on a recorded line. How are you doing today?  [long pause] I'm calling because our firm specializes in helping businesses like yours find solutions to their tax problems do you have a few minutes to discuss how we can assist you with tax settlement and relief?  [really long pause] Hello?  Great.  Well, we have a variety of accredited tax programs that offer protection to keep the IRS from harassing you and settling your debt for a fraction of what you owe. So I'm going to transfer you now to a specialist who can help. Is that okay?  Ok hold on. Just give me 1 second."

203.    The Telemarketer's computer screwed up this call.

204.    It voiced calling Script B, went silent for a while, and then restarted midway with another

well-known Alleviate tax calling script that will be known as Calling Script C:[16]

"Hi, my name is Jessica with Tax Relief Services on a recorded line. How are you doing today? Good to hear. So I wanted to reach out to you because we specialize in tax

---

[16] https://nomorobo.com/lookup/203-670-1870
https://www.nomorobo.com/lookup/305-830-7116
https://www.nomorobo.com/lookup/863-282-7748

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

settlement and have helped many individuals like yourself to reduce their taxes by up to 50% and regain their financial footing. So would you be interested in speaking with one of our experts to find out more about how we can help you?  Hello? Hello? Are you there? ***Great. Well, we have a variety of accredited tax programs that offer protection to keep the IRS from harassing you and settling your debt for a fraction of what you owe. So I'm going to transfer you now to a specialist who can help. Is that okay?*** Hold on. Just give me 1 second.  Please hold while we connect your call. [live caller] Hi, this is Brandon with Alleviate Tax. Hello, thank you for calling."

205.    In this complaint, calls said to be following Script B all start the same way and were spoken by identical sounding voice.

206.    Alleviate created some or all of this Script B.

207.    Alleviate approved the Telemarketer to initiate calls on its behalf using some or all of this Script B.

208.    Alleviate knew the Telemarketer was using some or all of this script B as the Telemarketer was initiating calls using this Script B.

209.    A warm transfer is when the Telemarketer has a consumer on the phone, and joins Alleviate to the call.

210.    Alleviate knew the Telemarketer was playing this script B to consumers before warm transferring them to Alleviate.

211.    Alleviate paid the Telemarketer a fee for every warm transfer that met certain requirements.

212.    Alleviate is alleged to have used the moniker "Jessica with tax relief center" in recent lawsuit *Salaiz v Alleviate Tax LLC*.[17]

213.    The entity making Script A calls is the same entity making Script B calls.

---

[17] https://dockets.justia.com/docket/texas/txwdce/3:2022cv00340/1190058

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

214.   Barton knew these Script B calls used artificial or pre-recorded voice for the same reasons he knew the Script A calls used artificial or pre-recorded voice.

215.   And because the computer glitched while "speaking" Script B and jumped to Script C.

216.   A warm transfer is when the Telemarketer has a consumer on the phone, and joins Alleviate to the call.

217.   Alleviate was aware calls using this Script B were being played to consumers and those consumers were being warm transferred to Alleviate.

218.   Nguyen, an Alleviate employee or agent, identified herself as "Tax Relief Services this is Ashley".

219.   She did so because while she knows incoming transfers were played a prerecorded or artificial voice script, she does not know what script was played to each consumer transferred to her.

220.   Nguyen knew "Tax Relief Services" was used in the calling scripts preceding warm transfers to her.

221.   Nguyen knows of other business names not registered to Alleviate that Alleviate uses to identify itself to people warm transferred to Alleviate.

222.   Nguyen was told by Alleviate to use that moniker.

223.   This was a common practice at Alleviate.

224.   This was an accepted practice at Alleviate.

225.   Nguyen has used other unregistered business names in similar circumstances.

**Calls using Calling Script B**

226.   Barton received the following calls that follow Calling Script B on the listed dates.

227.   They were received on his (972) phone number.

228.   Alleviate or their agent initiated these calls to Barton to sell him tax related services.

229.   The calling numbers were spoofed.  A call back to them said the calling number was not

in service or led to an unrelated person or business.

| Call # | Calling Number | Call Date | Phone # |
|--------|----------------|-----------|---------|
| 1 | 972 928 8720 | 4/13/2023 | (972) |
| 2 | 972 694 9866 | 4/18/2023 | (972) |
| 3 | 972 634 0377 | 6/5/2013 | (972) |
| 4 | 972 928 8726 | 5/12/2023 | (972) |
| 5 | 972 634 0377 | 6/9/2013 | (972) |

**Alleviate has solicited Barton via text messages**

230.   The Defendants initiated each of the calls to encourage Barton to purchase tax abatement

or related services.

231.   At 6:51am on 9/11/2023, Alleviate initiated or caused to be initiated a text message

solicitation to Barton's (972) phone number.

232.   The message said:

233.   "Shaw/Alleviate Tax.  I see you inquired about the IRS fresh start program.  When would

be a good time to call?  Thanks!  714.868.0476"

234.   The text message showed it was sent from (949) 334-5628.

235.   Alleviate was the customary user of Phone number (949) 334-5628 on 9/11/2023.

236.   Alleviate was the subscriber of Phone number (949) 334-5628 on 9/11/2023.

237.   Phone number (714) 868-0476 connects to Alleviate.

238.   Alleviate was the customary user of Phone number (714) 868-0476 on 9/11/2023.

239.   Alleviate was the subscriber of Phone number (714) 868-0476 on 9/11/2023.

240.   Barton called this number on 9/11/2023.

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

241.   On that day that phone number was answered with a voice saying "Thank you for calling Alleviate Tax".

242.   Alleviate initiated this text message to Barton or caused their agent to initiate it to Barton, for the purpose of encouraging Barton to purchase services from Alleviate.

243.   At 4:18pm on 10/30/2023, Alleviate initiated or caused to be initiated a text message solicitation to Barton's (972) phone number.

244.   The message said:

245.   "The IRS has officially began issuing annual holiday season garnishments/levy notices. Don't wait until it is too late!  Charles w/ Alleviate Tax 949-516-6991"

246.   The text message showed it was sent from (949) 523-1824

247.   Phone number (949) 523-1824 connects to Alleviate.

248.   Alleviate was the customary user of Phone number (949) 523-1824 on 10/30/2023.

249.   Alleviate was the subscriber of Phone number (949) 523-1824 on 10/30/2023.

250.   Phone number (949) 516-6991 connects to Alleviate.

251.   Alleviate was the customary user of Phone number (949) 516-6991 on 10/30/2023.

252.   Alleviate was the subscriber of Phone number (949) 516-6991 on 10/30/2023.

253.   Alleviate sent or substantially assisted in the transmission of both text messages to encourage Barton to purchase tax services from Alleviate.

254.   Barton did not give consent for these text message solicitations.

255.   Barton believes Alleviate sent them based on the 7/11/2023 phone call with Nguyen.

256.   Barton asked Nguyen more than 30 days prior to 9/11/2023 Barton on their *do-not-call* list.

**The calls use pre-recorded or artificially generated voice**

257.    Plaintiff knows the calls are using pre-recorded or artificially generated voice because they make speak in an announcement tone of voice, occasionally glitch, carry on for minutes without a break, do not invite any interaction from the recipient of the call, generally are identical to other calls including voice inflections, and the impersonal nature of each call.

258.    They also ask for a button press instead of a human response.

259.    They do not have a personalized greeting and none of these initial speakers invite verbal responses from the call recipient.  When the pre-recorded or artificially generated voice announcement is over, the call transitions to a live caller which would not be needed if the initial speaker was a live person.

### Other phone calls

260.    The above calls are the calls Barton was able to document.  Barton believes the Defendants have called him other times over the last four years, including but not limited to missed calls, other calling scripts, and/or with calls that did not start with artificial or pre-recorded voice.

### "this isn't a sales call"

261.    The Defendants may claim these robocalls are not a sales call because they were not collecting payment during the robocalls.  However:

> And it is the purpose behind a call, not what happens during that call, that governs for TCPA analysis of solicitation. See *Bennett*, 2019 WL 1552911, at *8. Further, "courts should 'approach the problem' of determining why calls were made 'with a measure of common sense.'" *Id*. (quoting *Chesbro*, 705 F.3d at 918).[18]

### Alleviate is responsible for all the Calls

262.    Alleviate hired a Telemarketer to robocall phone numbers on the Telemarketers list.

---

[18] *Moore v. Pro Custom Solar LLC*, 21 C 4395, 8 (N.D. Ill. Apr. 12, 2022)

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

263.    Alleviate also gave the Telemarketer their own list of phone numbers for the Telemarketer to call.

264.    Alleviate instructed the Telemarketer to robocall these lists, play an artificially or prerecorded voice message of the scripts Alleviate gave the Telemarketer, and transfer any consumers still on the line at the end of the script to Alleviate without any screening by the Telemarketer.

265.    The Telemarketer did as Alleviate instructed and paid for.

266.    Even if the agreement between Alleviate and the Telemarketer had language about the Telemarketer following telemarketing law, this language was only there to look good in the event Alleviate got sued.

267.    Alleviate knew exactly what was going on with illegal calls and their actual working agreement with the Telemarketer was "don't get caught".

268.    This is why Nguyen used a fake business name.

269.    This is why Nguyen spent 45 minutes on the phone with Barton before she dropped the fake business name and gave the real business name.

270.    This is why the Telemarketer blocked their outgoing number.

271.    This is why the calling scripts use fake business names and do not give any identifying information about who is calling and who they are calling for.

272.    Alleviate is liable for failing to identify who was calling and who the Telemarketer was calling for because they provided the Telemarketer the calling scripts that did not have this information.

273.    Alleviate knew the calling scripts did not have the required identifying information.

274.   Alleviate knew they would be in violation of the law on every phone call the script was used.

275.   Alleviate is legally liable for the calls the Telemarketer placed at Alleviate's direction.

276.   On 7/17/2023 Barton informed Alleviate that a telemarketer was robocalling to solicit business for Alleviate.

277.   Alleviate did not investigate the information nor did they fire or discipline the Telemarketer.

278.   Alleviate already knew that the Telemarketer was robocalling to solicit business specifically for Alleviate.

279.   If the Telemarketer decided Barton was a Lead, they only try to transfer Barton to Alleviate.

280.   The Telemarketer did not have a number of potential Sellers who might want the Lead.

281.   The Telemarketer could only transfer Barton to Alleviate or hang up.

282.   If the Telemarketer did not succeed in transferring Barton to Alleviate, they ended the call.

283.   This is evidence that the Telemarketer is Alleviate.

284.   Barton believes the Telemarketer likely is Alleviate.

285.   The Telemarketer never tried to transfer Barton to anyone but Alleviate's live sales staff.

286.   Alleviate is not very good at telemarketing which is why they experienced a lot of technical problems in transferring Leads to their live sales staff.

287.   Alleviate had no interest in investigating Bartons complaint and report because Alleviate was not interested in firing themselves.

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

288.   If the Telemarketer is not Alleviate, Alleviate is the only customer for their calling

campaign.

289.   Even if Alleviate has a contract with the Telemarketer which has language to the effect of

the Telemarketer required to follow all telemarketing laws, both Alleviate and the

Telemarketer knew that wasn't the actual agreement between the parties.

290.   From complaints and lawsuits Alleviate knew the Telemarketer wasn't following the law.

291.   Alleviate worked with the Telemarketer to reduce the risk of Alleviate getting sued for

the Telemarketer's illegal calls.

292.   They worked together to suppress caller ID so that call recipients would not know who

was calling them.

293.   They worked together to teach Alleviate's live staff not to answer the phone with

Alleviate's actual business name.

294.   They worked together to teach Alleviate's live staff to screen the warm transfers before

revealing Alleviate's identity.

295.   Alleviate frequently gave the Telemarketer new calling scripts to fool the people on the

Telemarketer's calling list into thinking they were getting tax services solicitation calls from

many different companies so the consumers would not realize it was all coming from

Alleviate.

296.   Alleviate told the Telemarketer what hours to robocall.

297.   Alleviate told the Telemarketer how many warm transfers per day they wanted.

298.   If the Telemarketer had someone they wanted to warm transfer to Alleviate but Alleviate

did not have a live agent available, Alleviate refused to accept the warm transfer and the

Telemarketer would just hang up.

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1    299.    They did so because the Telemarketer was calling exclusively for Alleviate.

2    300.    Because Alleviate worked with the Telemarketer to deceive consumers about who was

3          actually behind the calls, the Telemarketer knew Alleviate knew the Telemarketer was

4          placing illegal calls.

5    301.    Alleviate ratified Telemarketer's past illegal calls and the Telemarketer went on to place

6          more illegal robocalls to Barton for the benefit of Alleviate.

7    302.    Alleviate always had the option to fire the telemarketer but instead continued to pay the

8          telemarketer to place calls.

9    303.    Further, Barton alleges the Telemarketer had the actual or apparent authority to place

10          these illegal robocalls to solicit business for Alleviate.

11    304.    Alleviate knowingly solicits tax related services to people living in Washington State.

12    305.    Alleviate knowingly provides tax related services to people living in Washington State.

13    306.    Alleviate knew Barton lived in Washington State and continued to try and sell him tax

14          related services.

15    307.    Alleviate's contract with the Telemarketer did not instruct the Telemarketer to avoid the

16          dialing phone numbers of people residing in Washington State.

17    308.    Alleviate's contract with the Telemarketer provided exclusively.

18    309.    Alleviate understood the Telemarketer to be dialing phones to find consumers just for

19          Alleviate.

20    310.    Alleviate had the right to approve the calling scripts the Telemarketer used in the calls

21          placed on Alleviate's behalf.

22                                    **These calls are annoying**

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

311.   The phone ringing and listening to pre-recorded or artificial voice calls and where it takes time and annoyance to talk to a live person is obnoxious, an invasion of privacy, a trespass into Plaintiff's property and seclusion, and a waste of time.

312.   Likewise the buzzing and dinging of text messages an invasion of privacy, a trespass into Plaintiff's property and seclusion, and a waste of time.

313.   Answering the phone takes time that could be spent doing other things, and these calls do have a real, if small, cost in electricity and life of the phone.

314.   Trying to figure out who is behind the calls is obnoxious and costs Barton time.  These phone calls were initiated to encourage Plaintiff to purchase goods or service.

## Treble Damages

315.   Plaintiff believes the record shows that Defendants' violations of the law were willful or knowing.

316.   The Telemarketer did not identify itself within 30 seconds of the Script A calls.

317.   The Telemarketer did not identify Alleviate within 30 seconds of the Script A calls.

318.   Alleviate did not identify itself within 30 seconds of the Script B calls.

319.   Alleviate did not identify itself within 30 seconds of the Script B calls.

320.   Script A calls did not provide a telephone number.

321.   Script B calls did not provide a telephone number.

322.   Script A calls did not provide a telephone number that connected to the Telemarketer.

323.   Script B calls did not provide a telephone number that connected to the Telemarketer.

324.   Script A calls did not provide a telephone number that connected to Alleviate.

325.   Script B calls did not provide a telephone number that connected to Alleviate.

326.   Script A calls did not provide an address for the Telemarketer.

1    327.   Script B calls did not provide an address for the Telemarketer.

2    328.   Script A calls did not provide an address for Alleviate.

3    329.   Script B calls did not provide an address for Alleviate.

4    330.   Nguyen told Barton the fake business name of "Tax Relief Services" on 7/13/2023.

5    331.   Nguyen did not ask Barton's permission to call Barton back during the 41-minute call.

6    332.   The Telemarketer did not transmit the calling number in the Script A calls.

7    333.   Script A did not identify the Telemarketer.

8    334.   Script A did not identify Alleviate.

9    335.   Script B did not identify the Telemarketer.

10   336.   Script B did not identify Alleviate.

11   337.   The Telemarketer transmitted fake numbers in the Script B calls.

12   338.   The Telemarketer abandoned almost every call.

13   339.   The Telemarketer robocalled without consent.

14   340.   The Telemarketer ignored Barton's do not call requests.

15   341.   Alleviate ignored Barton's do not call requests.

16   342.   They have a long history of doing all of this to other people.

17   343.   Alleviate only gave their actual business name to Barton after a long screening process.

18   344.   The BBB page for Alleviate chronicles how Alleviate knows they should be scrubbing

19          their calling list against the "national DNC".[19]

20   345.   This is a complaint they received on 9/28/2022

---

[19] https://www.bbb.org/us/ca/irvine/profile/tax-return-preparation/alleviate-tax-llc-1126-1000062423/complaints

 **Initial Complaint**
09/28/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered ⍰

I've been receiving many calls from this company, at first I thought it was a scammer, and then I found out they are actual attorneys. I called them back and talked to a very kind gentleman who hung up on me as soon as I asked his name. I called back again and the next gentleman also hung up on me as soon as I asked for his name. In order to file a complaint against alleviate tax with the bar association in **********, I need to know the names of specific attorneys that have been calling me. Take responsibility for your actions, and give me the names of the people that have been calling me so that I can appropriately file what I need to in court. I live across the country from ********** and I owe the *** less than $100, how did they get my number? I have records and recordings of you calling me hundreds of times. There's no way that this is legal, and not harassment.

1  346.

2  347.   And their response on 5/3/2023

 **Business response**
05/03/2023

*****, my sincerest apologies.  Can you confirm this has been resolved and you have not been getting any more calls from Alleviate Tax?  Your number has been on our DNC list since you made this complaint.  If you still have received calls, please contact me at *******************************.  Again, I do apologize and I hope you can report that you have not received any more calls.  I can provide you any additional information you need via email.  Alleviate Tax does not have the resources to dial you hundreds of times, so my assumption is your number is on a list that is being given out to tax companies as someone who needs help with resolving tax debt.  While I can confirm my company is no longer contacting you, I can't confirm that you will not receive calls from other companies.  We have a system in place where our marketing vendors get copies of the national DNC registry and our internal DNC list, and I apologize if somehow you were originally missed, but this has been corrected.

3  348.

4  349.   Alleviate pulls phone numbers from public sources and then places calls to those

5  numbers.

6  350.   This is a complaint against Alleviate on the same page posted on 7/8/2022

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

 **Initial Complaint**
07/08/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered ❓

On 7/8/22 at 1:21pm I received an unsolicited spam call from ************. When I answered, there was only silence on the line. When I called back, I was connected to ****** who asked me if I needed help with my tax debt. This is the sixth such harassment call I have received from this phone number since May 19, including one on 5/31, 6/3, 6/20, and 6/28. I asked ****** why his company kept harassing me despite the fact that this number is on the *** registry, and he was unable to provide a response. I asked who provided my number to him, and he refused to tell me, claiming he didnt know. He kept playing dumb and hanging up on me. This type of repeated, harassing, nuisance spam call is unacceptable and I want to know who has been providing these companies with my phone number. This was totally unsolicited, I have never even heard of this company, and I never contacted them requesting any kind of help with tax debt.

1  351.

2  352.    Alleviate responded on 7/18/2022

 **Business response**
07/18/2022

****************, Id' like to begin by apologizing for your negative experience. Our records show that at you had submitted an online inquiry for assistance with a tax issue, which was how we received your information.  By no means are we a scam; we employ attorneys, enrolled agents and CPAs.  Your contact information was promptly added to our DNC list on July 8th.  I pulled our phone records and no phone calls have been made to you since that date.  I hope that you feel your issue has adequately been resolved, and if not please contact me, ********************** Director of of Operations, at ****************************** or my direct phone number is *************.  Thank you.

3  353.

4  354.    The complainant called Alleviate's story a lie

 **Customer response**
07/18/2022

I never submitted *** form of "online inquiry". That is a lie.  I have no tax problems whatsoever. I reject this response because you did not answer my question.

5  355.

6  356.    And Alleviate responded on 8/2/2022

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

 **Business response**
08/02/2022

****************, my apologies for the delay.  I had to put in an inquiry with marketing to figure out how your number was obtained.  My brief review of your phone number showed it came in from the internet; however, I do stand corrected because your information was gathered from an *** federal tax lien list.  A federal tax lien is public information, as the *** files a Notice of Federal Tax Lien with the county courthouse.  Anyone is able to obtain this information.  Also, it is worth noting that the lien information we receive can be quite old and outdated.  I do believe I have provided you with the information you requested.  Because you are on our DNC list, you will not be contacted by us again.  It would be very likely that another tax firm may also have your information.

357.

358. Which the complainant responded on 8/9/2022.

 **Customer response**
08/09/2022

Your explanation is a lie. I was never on any "tax lien list", because I have never been subject to a tax lien. Saying you got my number from "the internet" is not an answer. I would not advise you to continue lying to me.

359.

360. It is irrelevant if the complainant did or did not have a tax lien.

361. Alleviate admitted to obtaining the complainant's phone number from a tax lien list.

362. After first claiming the complainant asked for calls from Alleviate.

363. Alleviate obtained Barton's (360) number from public records.

364. Alleviate gave Barton's (360) number to the Telemarketer.

365. Alleviate gave Barton's (360) number to the Telemarketer to solicit Barton.

366. The Defendants obtained Barton's (360) number from public records.

367. The Defendants obtained Barton's (972) number from public records.

368. Alleviate gave Barton's (972) number to the Telemarketer.

369.   Alleviate gave Barton's (972) number to the Telemarketer to solicit Barton.

370.   The Defendants obtained Barton's (469) number from public records.

371.   Alleviate gave Barton's (469) number to the Telemarketer.

372.   Alleviate gave Barton's (469) number to the Telemarketer to solicit Barton.

373.   A former employee left Alleviate a review on Glassdoor.[20]  The 11/15/2023 review said under Cons:

374.   "Be prepared to be threatened everyday with being terminated. The CEO is the biggest pain the the [sic] rear there is. While supplying you with low quality leads and bs transfers from overseas call centers and "Ai" garbage inbound calls."

375.   The "low quality leads" is because Alleviate and the Telemarketer didn't have the consent of the people they called and they people they called didn't need or want tax services.

376.   In another former employee review dated 3/6/2019 the review said:

377.   "It really feels like cold call, even agg [sic] leads have no idea why they are being spoken too."

378.   It feels like cold calling when the people Alleviate gets on the phone have no idea why Alleviate is calling.

379.   In a review dated 3/2/2019, the review said:

380.   "Owner was cool, hands on, but was more like a call center $12.00 telemarketing job. Low commissions" and "if you like cold calling old leads you'll love this place".

381.   Alleviate is cold calling old leads.

382.   Alleviate has paid settlements to plaintiffs in the past for claims of illegal robocalls.

---

[20] https://www.glassdoor.com/Reviews/Alleviate-Tax-Reviews-E2378246.htm

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

383.   Alleviate paid settlements in 2021 to plaintiffs for claims of illegal robocalls.

384.   Alleviate paid settlements in 2022 to plaintiffs for claims of illegal robocalls.

385.   Alleviate paid settlements in 2023 to plaintiffs for claims of illegal robocalls.

386.   Alleviate paid settlements in the year 2021 in response to demand letters for claims of illegal robocalls.

387.   Alleviate paid settlements in the year 2022 in response to demand letters for claims of illegal robocalls.

388.   Alleviate paid settlements in the year 2023 in response to demand letters for claims of illegal robocalls.

389.   In a job posting for a Sales position,[21] Alleviate put in the job description:

390.   "Cold Calling and negotiating skillset"

391.   Therefore, Plaintiff asks for treble damages under TCPA 47 U.S.C. 227(c) and TCPA 47 U.S.C. 227(b), and the presumption that violations of RCW 80.36.400 are awarded triple damages under the Washington State Unfair Business Practices Act RCW 19.86.

## V.   RELIEF

### Federal Claims - TCPA 47 U.S.C. 227 & 47 C.F.R § 64.1200

### Count 1

392.   Defendants violated 47 U.S.C. 227(b) by calling Plaintiff's cellular telephone while using an artificial or prerecorded voice.  No exception under 47 C.F.R § 64.1200, or 47 U.S.C. 227 applies to their calls.

---

[21] https://www.glassdoor.com/Job/irvine-ca-sales-representative-jobs-SRCH_IL.0,9_IC1146798_KO10,30.htm?jl=1008974114716&ao=1136043&s=21&guid=0000018bfe3125a1b2fdbbb85eb4b129&pos=101&t=ESR&srs=EI_JOBS&src=GD_JOB_AD&uido=C4EF241F60263BA7534ECD7E67E48203&jrtk=5-yul1-0-1hfv329hcikf8800-b9777b6ce97eaa32&cs=1_c01ea3f8&jobListingId=1008974114716&ea=1&rdserp=true&vt=w&cb=1700776715931

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

**Count 2**

393.    Defendants violated the regulations governing the TCPA, 47 C.F.R § 64.1200, and TCPA

47 U.S.C. 227(c) by making telephone solicitations to Plaintiff's cellular telephone numbers

while the numbers were registered on the FTC's National do-not-call registry.  No exception

under 47 C.F.R § 64.1200, or 47 U.S.C. 227 applies to their calls.

**Count 3**

394.    Defendants violated 47 C.F.R § 64.1200(a)(7) by abandoning more than 3 percent of their

telemarketing calls to Barton.

395.    In the majority of calls initiated to Plaintiff by the Telemarketer, or on the Telemarketer's

behalf, where Plaintiff answered a ringing telephone and timed how long it took for the entity

behind the call to start 'speaking', the calls did not meet the two second requirement.

396.    In the abandoned calls, Defendants violated 47 C.F.R § 64.1200(a)(7)(i)(A) and (B).

**Count 4**

397.    Defendants violated 47 C.F.R § 64.1200(c)(1) by telephone soliciting after 9pm but

before 8am.  No exception under 47 C.F.R § 64.1200, or 47 U.S.C. 227 applies to their calls.

**Count 5**

398.    Defendants violated 47 C.F.R. § 64.1200(b) "All artificial or prerecorded voice telephone

messages shall" (1) by failing to comply with:

>       "At the beginning of the message, state clearly the identity of the business,
>       individual, or other entity that is responsible for initiating the call. If a
>       business is responsible for initiating the call, the name under which the
>       entity is registered to conduct business with the State Corporation
>       Commission (or comparable regulatory authority) must be stated;"

399.    Defendants violated 47 C.F.R. § 64.1200(b) "All artificial or prerecorded voice telephone

messages shall" (2) by failing to comply with:

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1    "During or after the message, state clearly the telephone number (other than
2    that of the autodialer or prerecorded message player that placed the call) of
3    such business, other entity, or individual. The telephone number provided
4    may not be a 900 number or any other number for which charges exceed
5    local or long distance transmission charges. For telemarketing messages to
6    residential telephone subscribers, such telephone number must permit any
7    individual to make a do-not-call request during regular business hours for
8    the duration of the telemarketing campaign; and"

9  400. Defendants violated 47 C.F.R. § 64.1200(b) "All artificial or prerecorded voice telephone

10  messages shall" (3) by failing to comply with:

11    "In every case where the artificial or prerecorded voice telephone message
12    includes or introduces an advertisement or constitutes telemarketing and is
13    delivered to a residential telephone line or any of the lines or telephone
14    numbers described in paragraphs (a)(1)(i) through (iii), provide an
15    automated, interactive voice- and/or key press-activated opt-out mechanism
16    for the called person to make a do-not-call request, including brief
17    explanatory instructions on how to use such mechanism, within two (2)
18    seconds of providing the identification information required in paragraph
19    (b)(1) of this section."

20  401. The Telemarketer did not provide the identification information required in paragraph

21  (b)(1) and thus did not provide an opt out mechanism within two seconds of it.  The Script B

22  calls did not mention any opt out mechanism at all.

23              **Count 6**

24  402. Defendants violated 47 C.F.R. § 64.1200(d)(4) "All artificial or prerecorded voice

25  telephone messages shall" (3) by failing to comply with:

26    "Identification of sellers and telemarketers. A person or entity making a call
27    for telemarketing purposes must provide the called party with the name of
28    the individual caller, the name of the person or entity on whose behalf the
29    call is being made, and a telephone number or address at which the person
30    or entity may be contacted."

403. The Telemarketer did not "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted" on any call.

**Washington State Claims**

**RCW 80.36.390 – Prior to July 23, 2023**

**Count 7**

404. Washington State RCW 80.36.390(2) said

> A person making a telephone solicitation must identify him or herself and the company or organization on whose behalf the solicitation is being made and the purpose of the call within the first thirty seconds of the telephone call.

405. In many calls the defendants failed to identify the company on whose behalf the solicitations were being made within the first 30 seconds of the phone calls.

**RCW 80.36.390 – On or after July 23, 2023**

**Count 8**

406. Washington State RCW 80.36.390(3) now says

> A person making a telephone solicitation must identify him or herself and the company or organization on whose behalf the solicitation is being made and the purpose of the call within the first seconds of the telephone call.

407. Defendants failed to identify themselves and the purpose of the call as required legally during the first 30 seconds of the phone calls.

**Count 9**

408. Washington State RCW 80.36.390(9) now says

> No person may initiate, or cause to be initiated, a telephone solicitation to a telephone number registered on the do not call registry maintained by the federal government pursuant to telephone consumer protection act, 47 U.S.C. Sec. 227 and related regulations, as currently enacted or

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1     subsequently amended. This subsection applies to all telephone solicitation
2     intended to be received by telephone customers within the state.

3   409.   The Defendants initiated many calls to Barton's cell phone numbers while they were

4   registered on the do not call registry maintained by the federal government pursuant to

5   telephone consumer protection act, 47 U.S.C. Sec. 227 and related regulations.  They did so

6   knowing that Barton resided in the 98607 zip code.

7                                    **Count 10**

8   410.   Washington State RCW 80.36.390(10) now says

9     It is unlawful for a person to initiate, or cause to be initiated, a telephone
10    solicitation that violates 47 U.S.C. Sec. 227(e)(1), as currently written or as
11    subsequently amended or interpreted by the federal government. This
12    subsection applies to all telephone solicitation intended to be received by
13    telephone customers within the state.

14  411.   The Defendants knowingly initiated calls to Barton's cell phone numbers while

15  transmitting misleading or inaccurate caller identification information with the intent to

16  defraud, cause harm, or wrongfully obtain something of value from Barton.  They did so

17  knowing that Barton resided in the 98607 zip code.

18                                 **RCW 80.36.400**

19                                   **Count 11**

20  412.   Washington State RCW 80.36.400(2) states:

21    "No person may use an automatic dialing and announcing device for
22    purposes of commercial solicitation. This section applies to all commercial
23    solicitation intended to be received by telephone customers within the
24    state."

25  413.   Defendants violated Washington State RCW 80.36.400(2) many times by calling

26  Plaintiff's cellular telephone number without consent, while using an automatic dialing and

27  announcing device for commercial solicitation.

414.   RCW 80.36.400 defines "Commercial solicitation means the unsolicited initiation of a telephone conversation for the purpose of encouraging a person to purchase property, goods, or services."

## RCW 19.190

## Count 12

415.   Washington State's Consumer Electronic Mail Act ("CEMA") prohibits initiating or substantially assisting in the transmission of any "electronic text message sent to promote real property, goods, or services for sale or lease"[22] without the explicit permission of the receiving party.

416.   (1) No person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages.

417.   (2) The legislature finds that the practices covered by this section are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW. A violation of this section is not reasonable in relation to the development and preservation of business and is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW.  RCW 19.190.060.

418.   The Washington State Supreme Court has held[23] that sending a text message in violation of CEMA is a per-se violation of the states' Consumer Protection Act statute, meaning it

---

[22] RCW 19.190.010(3)
[23] *Wright v. Lyft, Inc*., 189 Wash. 2d 718, (Wash. 2017)

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1   automatically satisfies all five elements.  "In fact, damages for CEMA violations

2   are *automatic*."  *Id.*

3   419.    The Washington State legislature determined that "[d]amages to the recipient of a . . .

4   commercial electronic text message sent in violation of this chapter are five hundred dollars,

5   or actual damages, whichever is greater." RCW 19.190.040(1).

6   420.    The Defendants either initiated or substantially assisted in the transmission of one or

7   more text messages to Plaintiff that promoted the sale of goods or services.

8                                   **Injunctive Relief**

9   421.    TCPA 47 U.S.C. 227(b) and (c) allows an action based on a violation of the regulations

10   prescribed under this subsection to enjoin such violation.

11   422.    Washington State RCW 80.36.390(6) says:

12           A person aggrieved by repeated violations of this section may bring a civil
13           action in superior court to enjoin future violations, to recover damages, or
14           both.

15   423.    Plaintiff is not unique – he simply had the misfortune to be targeted by Defendants' mass

16   calling machine.  It is reasonable to believe that Defendants have done this many times in the

17   past and will continue harming the residents of this State and other States in the future.

18   424.    Plaintiff asks this Court to enjoin the Defendants from calling phone numbers using pre-

19   recorded or artificial voices without consent.

20                              **All Possible Statutory Damages**

21   425.    Barton prays for all possible statutory damages and costs that he might be entitled to.

22   Examples might be, but are not limited to, court costs, attorney fees (should he retain an

23   attorney to represent him in this lawsuit), pre-judgement interest, and post-judgement

24   interest.

1

2

3  Signed at Camas, WA on 11/23/2023.

4  _____/s/Nathen Barton_____

5         (Nathen Barton)

6

7  Nathen Barton

8  (469) 347-2139

9  BlueWind33@protonmail.com

10

11

12                    CERTIFICATE OF SERVICE

13        I hereby certify that I caused the foregoing document to be electronically filed with the

14  Clerk of the Court using the Electronic Filing (CM/ECF) system, which will send notification of

15  such filing to all counsel of record and all pro se parties registered to use the CM/ECF system.

16

17  _____/s/ Nathen Barton_____        _____11/23/2023_____

18         Nathen Barton                      (Dated)